In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-04-00156-CR
______________________________


OTHA JAMES, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee


                                              

On Appeal from the 71st Judicial District Court
Harrison County, Texas
Trial Court No. 03-0356X


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Justice Carter


O P I N I O N

            Otha James appeals his conviction by jury trial for attempted murder. After the jury found
him guilty, James pled true to having previously been convicted of a felony, and the jury assessed
punishment at eighty years' imprisonment. The trial court sentenced James consistent with the jury's
assessment. On appeal, James argues the evidence is legally and factually insufficient. In addition,
James argues the sentence of eighty years is illegal and violated James' due process and due course
of law rights because the State failed to provide adequate notice of the enhancement allegation. We
affirm the judgment of the trial court.
            On the evening of February 14, 2003, James stopped a vehicle passing in front of his
girlfriend's residence and asked its occupants to call an ambulance because—according to him—his
girlfriend, Maudie Couch, had just attempted suicide. When the police and the emergency crew
arrived, they found Couch unconscious with a gunshot wound to the forehead. A .22 caliber rifle
was found lying on Couch's hand. The police investigation developed forensic evidence inconsistent
with the suicide theory. When Couch regained consciousness several days later, she informed the
police that she did not attempt to commit suicide and that James shot her. At trial, Couch testified
that she saw James approaching the closet where the gun was located and that she saw him with a
gun, but did not remember anything further until she woke up in the hospital. A jury found James
guilty of attempted murder.
1)        The Evidence is Legally Sufficient
            In his first point of error, James contends the evidence is legally insufficient to support the
jury's verdict. According to James, a rational juror could not have found him guilty beyond a
reasonable doubt because the State did not directly prove he shot Couch. Couch did not testify at
trial that she saw James shoot her, James' fingerprints were not found on the gun, and the gunshot
residue test was inconclusive. However, when viewed in a light most favorable to the prosecution,
a rational juror could have found James guilty beyond a reasonable doubt.
            In our review of the legal sufficiency of the evidence, we employ the standards set forth in
Jackson v. Virginia, 443 U.S. 307, 319 (1979). This calls on the court to view the relevant evidence
in the light most favorable to the verdict and determine whether any rational trier of fact could have
found the essential elements of the crime beyond a reasonable doubt. Johnson v. State, 23 S.W.3d
1, 7 (Tex. Crim. App. 2000). In our review, we must evaluate all of the evidence in the record, both
direct and circumstantial, whether admissible or inadmissible. Dewberry v. State, 4 S.W.3d 735, 740
(Tex. Crim. App. 1999). 
            The State introduced a substantial amount of evidence to dispute the theory that Couch
attempted suicide. Couch denied attempting suicide, and the forensic evidence indicated the wound
was not the result of a suicide attempt. Couch testified she had no intention of killing herself. The
forensic evidence established that Couch could not reach the trigger of the rifle when placed against
her forehead—the location of the wound—and there was no evidence of "blow-back" or powder
burns, which would have been found with a close-contact wound. 
            The investigators concluded that Couch, due to her small size, could not have attempted to
commit suicide with the .22 caliber rifle that caused her wound. Detective Chris Jones, a detective
with the Marshall Police Department at the time of the offense, testified that the reach of the rifle
was twenty-six and one-half inches and that Couch's maximum reach was "right at 26½ inches." 
Jones testified Couch could not reach the trigger of the gun when the muzzle was placed against her
forehead in the manner described by James. A video reconstruction of Couch attempting to reach
the trigger was introduced into evidence. 
            If the wound was self-inflicted, there should have been "blow-back" and powder burns, but
neither was found by the investigators. Reid McCain, a sergeant with the Crime Scene Unit of the
Marshall Police Department, testified that, if Couch had attempted suicide with the rifle, the wound
necessarily would have been a close-contact wound. Wade Thomas, a criminalist with the Texas
Department of Public Safety, testified that, when a weapon is discharged within six inches of the
wound, it is expected that stippling or powder burns will be present. Dr. John McWilliams, who was
board certified in emergency medicine and had worked over 100 gunshot wounds, testified there was
no soot, stippling, or any kind of powder burns around the gunshot wound. Further, there was no
evidence of "blow-back," which was inconsistent with a close-contact wound. Thomas explained
there is a vacuum in a gun after it is discharged, which will pull blood back into the barrel, known
as "blow-back," when a person is shot at close range. Tests conducted by Thomas detected no
"blow-back" in the gun barrel. McCain testified he observed no evidence of "blow-back." Viewed
in a light most favorable to the prosecution, a rational juror could have rejected the theory that Couch
attempted suicide.
            McCain and Jones both testified that, when they interviewed Couch in the hospital, she told
them James shot her. At trial, Couch admitted she had given a written statement in which she said
she did not remember what happened after James approached the closet where the rifle was located. 
Her testimony at trial was that James opened the closet where the gun was located and the next thing
she remembered was being at the hospital. She later said she saw James "having a gun in his hand
stepping out of the closet." Even though Couch's testimony was inconsistent, the State presented
sufficient circumstantial evidence for the jury to conclude beyond a reasonable doubt that James was
the person who shot Couch. Couch testified that she did not attempt suicide, that she and James
were fighting, and that she last saw James next to the closet where the rifle was kept. 
            Couch testified she had told James he needed to find a job before February 14 or she would
no longer allow him to live with her. According to Couch, James had threatened to kill her if she
ever tried to "kick him out of the house." Couch testified that she and James had been arguing and
that James went to the closet where the rifle was kept. Although Couch stated at one point she did
not remember what happened after James approached the closet, she testified she did not shoot
herself. In addition, Couch testified she and James were the only persons present in the residence. 
            Several other witnesses corroborated parts of Couch's story. Mary Smith, Couch's daughter,
testified James had threatened several times to kill Couch if she ever left him. Smith testified she
had visited Couch earlier that night to ask Couch to go to a club with her and a friend. According
to Smith, Couch told her "she couldn't go because she was waiting for Otha James to come back so
he could get his clothes and leave." Teresa Torres, who was visiting relatives who live close to
Couch and had only met Couch that evening, testified that Couch told her she was going to have to
ask James to leave. 
            Viewed in a light most favorable to the prosecution, a rational juror could have concluded
James committed attempted murder beyond a reasonable doubt. A rational juror could have
concluded that Couch did not attempt suicide and that James was the person who shot Couch with
a rifle. The evidence is legally sufficient. 
2)        The Evidence is Factually Sufficient
            James argues, in his second point of error, that the evidence is factually insufficient to
support the jury's verdict of guilty. According to James, the evidence is so weak as to undermine
confidence in the verdict because the State's case is based on the theory that the victim could not
have shot herself and did not directly prove that James was the attacker. In addition, James argues
that the State's witnesses and theories are so weak as to undermine confidence in the verdict. We
conclude that the evidence supporting the verdict is sufficient to support the finding of guilt beyond
a reasonable doubt and that the evidence contrary to the verdict is not strong enough to prevent the
State from meeting its burden of proof. 
            When reviewing a challenge to the factual sufficiency of the evidence to support the
conviction, we are required to determine whether, considering all the evidence in a neutral light, the
jury was rationally justified in finding guilt beyond a reasonable doubt. Zuniga v. State, 144 S.W.3d
477, 484 (Tex. Crim. App. 2004). There are two ways in which we may find the evidence to be
factually insufficient. Id. First, if the evidence supporting the verdict, considered alone, is too weak
to support the jury's finding of guilt beyond a reasonable doubt, then we must find the evidence
insufficient. Id. Second, if—when we weigh the evidence supporting and contravening the
conviction—we conclude that the contrary evidence is strong enough that the State could not have
met its burden of proof, we must find the evidence insufficient. Id. at 484–85. "Stated another way,
evidence supporting guilt can 'outweigh' the contrary proof and still be factually insufficient under
a beyond-a-reasonable-doubt standard." Id. at 485. If the evidence is factually insufficient, then we
must reverse the judgment and remand for a new trial. Clewis v. State, 922 S.W.2d 126, 135 (Tex.
Crim. App. 1996).
            In weighing the evidence contravening and supporting the conviction, we find that McCain
testified he was unable to collect any fingerprints from the gun, but noted that fingerprints are not
always deposited on objects, depending on the texture of the surface of the object and the amount
of moisture, or oils, on a person's hand. McCain testified that the barrel of the gun had scratches and
a rough finish. The police did not conduct a gunshot residue test


 on Couch, since she was already
being treated by the time the crime scene unit arrived. The gunshot residue test conducted on James
was inconclusive for the right hand and resulted in a negative conclusion for his left hand. However,
McCain testified that inconclusive results are not unusual and inconclusive results do not necessarily
indicate that James did not fire the gun. Ivan Wilson, a criminalist with the Texas Department of
Public Safety, testified that rifles generally deposit less residue than pistols. In addition, the residue
can be removed by washing your hands and the residue can be spread by rubbing your hands
together. However, as discussed above, the State presented evidence that Couch did not attempt
suicide and circumstantial evidence supported the conclusion that James shot Couch. Viewed in a
neutral light, the evidence is not so weak that the State could not have met its burden of proof.
            James presented some contrary evidence indicating Couch may have attempted suicide. 
James argued at trial that Couch attempted suicide because he had not married her by the fourteenth. 
Couch admitted that she had told people that, if James did not marry her by the fourteenth,
something was going to happen. Tameka Taylor, James' daughter, testified Couch had told them she
would kill herself if James ever left her. Lakesha James, James' sister, testified Couch told her she
would kill herself if James left her or if they were not married by Valentine's Day. However, Smith
testified that there had never been any discussion of marriage. 
            At trial, James also argued that the scene was consistent with suicide. Only one used shell
was found in the room. The used shell was located on the bed next to a live round. However,
McCain testified that the shells were unloaded by "MFD personnel." A fragment of a bullet was
found in the ceiling above the bed. McCain testified that, when a bullet strikes a hard object, it will
fragment and the fragments may go in different directions. 
            In addition, some evidence was introduced to impeach Couch's testimony. Couch admitted
using crack cocaine on the day of the incident. Dr. McWilliams testified that cocaine may cause a
person to become disassociated with themselves or their surroundings and could make a person
paranoid. In addition, Couch did attempt suicide eighteen years ago. The contrary evidence, though,
is not so strong that the State could not have met its burden of proof. 
            When viewed in a neutral light, the evidence is not so weak that a rational juror could not
have found James guilty beyond a reasonable doubt. After weighing the evidence supporting and
contravening the conviction, we conclude that the contrary evidence is not strong enough to prevent
the State from meeting its burden of proof. The State offered explanations for much of the contrary
evidence, presented evidence refuting the suicide theory, and introduced circumstantial evidence
indicating James shot Couch. Matters concerning an evaluation of credibility and demeanor are the
sole province of the jury. Cain v. State, 958 S.W.2d 404, 408–09 (Tex. Crim. App. 1997). The
evidence is factually sufficient.
3)        Any Error Concerning the Notice of the Enhancements Was Waived
            In his third and fourth points of error, James challenges the enhancement of his punishment. 
James alleges that the sentence is void because it is outside the range authorized by law and that the
lack of notice violated his due process and due course of law rights.


 According to James, he was
only subject to punishment for attempted murder, a second-degree felony, because he received
inadequate notice of the State's intent to enhance the conviction.


 Since he was sentenced to eighty
years' imprisonment and the maximum punishment for a second-degree felony is twenty years, James
argues his sentence was unlawful. Because no objection to the reasonableness of the notice was
made at the trial court level, James has not preserved this error for our review. The sentence is
lawful because James was subject to enhanced punishment due to a prior conviction.
            The core of due process includes the right to notice and a meaningful opportunity to be heard. 
LaChance v. Erickson, 522 U.S. 262 (1998); see U.S. Const. amend. V. The accused has a right
to reasonable notice that a greater penalty is to be sought pursuant to an enhancement. Sears v. State,
91 S.W.3d 451, 454 (Tex. App.—Beaumont 2002, no pet.). The enhancement notice must be in
writing and give the accused notice that the State will attempt to use a specific conviction for
enhancement of punishment. Brooks v. State, 921 S.W.2d 875, 878 (Tex. App.—Houston [14th
Dist.] 1996), aff'd, 957 S.W.2d 30 (Tex. Crim. App. 1997). The allegations should include (1) the
court in which the prior conviction was obtained, (2) the time of the prior conviction, and (3) the
nature of the prior offense. Cole v. State, 611 S.W.2d 79, 80 (Tex. Crim. App. [Panel Op.] 1981). 
While ten days is presumptively reasonable, there is no definite time frame required for notice to be
timely. Sears, 91 S.W.3d at 455; see Fairrow v. State, 112 S.W.3d 288, 294 (Tex. App.—Dallas
2003, no pet.).
            The notice of enhancement was filed five days before jury selection and six days before the
beginning of evidence. The record contains no evidence of an objection that James had not received
reasonable notice of the enhancement. When the State informed the trial court it was going to
abandon one of the two alleged enhancements but the punishment range would be the same, James'
trial attorney responded, "That is correct." Further, James made no objection to the final charge
concerning the range of punishment. James never raised the alleged lack of reasonable notice at any
point with the trial court.
            In general, the Texas Rules of Appellate Procedure require a timely, specific objection as a
prerequisite to presenting a complaint for appellate review, except for fundamental error. Tex. R.
App. P. 33.1. Failure to comply with Rule 33.1(a) forfeits all complaints, including constitutional,
except for complaints involving systemic requirements or rights that are waivable only. Mendez v.
State, 138 S.W.3d 334, 342 (Tex. Crim. App. 2004). An objection was required to preserve error. 
            We note that, if a punishment is not authorized by law, the sentence is "void" and error need
not be preserved at the trial court level. Hern v. State, 892 S.W.2d 894, 896 (Tex. Crim. App. 1994);
see Scott v. State, 988 S.W.2d 947, 948 (Tex. App.—Houston [1st Dist.] 1999, no pet.). But see
Speth v. State, 6 S.W.3d 530, 532 (Tex. Crim. App. 1999) (objections to community supervision
must be preserved at trial court level). However, James' sentence was authorized by law because of
the enhancement allegation. Attempted murder is a second-degree felony.


 Since James had
previously been convicted of a felony, the punishment range was enhanced to a first-degree felony. 
See Tex. Pen. Code Ann. § 12.42(b) (Vernon Supp. 2004–2005). The punishment range for a first-degree felony is life or not more than ninety-nine years or less than five years. Tex. Pen. Code Ann.
§ 12.32 (Vernon 2003). James pled true to the enhancement, and the State introduced evidence of
the prior felony conviction. At punishment, evidence of a total of six prior convictions were
introduced into evidence without objection. Because the offense was enhanced to a first-degree
felony, James' sentence was authorized by law.
            James was required to object to the alleged lack of reasonable notice in order to preserve the
issue for appellate review. Since any error concerning notice was not preserved and the offense was
enhanced to a first-degree felony, the sentence was lawful. We overrule James' third and fourth
points of error.
            For the reasons stated, we affirm the judgment of the trial court.
 

                                                                        Jack Carter
                                                                        Justice
 
Date Submitted:          March 3, 2005
Date Decided:             April 7,2005

Do Not Publish